1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER HAYDO,

                          Plaintiff,

     v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                      Defendant.

Case No. 3:10-cv-05052-RBL-KLS

REPORT AND RECOMMENDATION

Noted for April 22, 2011

       Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

       On September 14, 2004, plaintiff filed an application for disability insurance benefits, alleging disability as of February 21, 2002, due to issues with his back, neck, shoulder, hip, and left hand, digestive problems, chronic pain, shortness of breath, damage from radiation therapy, depression, and adult attention deficit disorder. See Tr. 62, 67-68, 462. His application was

REPORT AND RECOMMENDATION - 1

1    denied upon initial administrative review and on reconsideration. See Tr. 54, 57, 462.  A hearing

2    was held before an administrative law judge ("ALJ") on July 31, 2007, at which plaintiff,

3    represented by counsel, appeared and testified via telephone. See Tr. 420A-458.  Also at that

4    hearing, a medical expert appeared and testified in person, as did a vocational expert via video

5    teleconference. See id.

6

7         On November 26, 2007, the ALJ issued a decision in which plaintiff was determined to

8    be not disabled. See Tr. 12-24.  Plaintiff's request for review of the ALJ's decision was denied

9    by the Appeals Council on March 25, 2008, making the ALJ's decision defendant's final

10   decision. See Tr. 4; 20 C.F.R. § 404.981.  Plaintiff sought judicial review of defendant's decision

11   in this Court, which on September 25, 2008 – based on the parties' stipulation – remanded this

12   matter for further administrative proceedings. See Tr. 462, 478-83.  On November 19, 2008, the

13   Appeals Council vacated the ALJ's decision, and remanded the matter back to an ALJ to proceed

14   in accordance with this Court's remand order. See Tr. 484-87.

15

16         On June 3, 2009, another hearing was held before the same ALJ, at which plaintiff, once

17   more represented by counsel, appeared and testified, as did a different vocational expert. See Tr.

18   1088-1119.  On November 24, 2009, the ALJ issued a second decision in which plaintiff again

19   was determined to be not disabled. See Tr. 462-76.  It does not appear from the record that the

20   Appeals Council assumed jurisdiction of the case. See 20 C.F.R. § 404.984.  The ALJ's decision

21   therefore became defendant's final decision after sixty days. Id.  On January 27, 2010, plaintiff

22   filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1-#3.

23   The administrative record was filed with the Court on July 21, 2010. See ECF #14.  The parties

24   have completed their briefing, and thus this matter is now ripe for the Court's review.

25

26         Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an

REPORT AND RECOMMENDATION - 2

award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in assessing his credibility; (3) in evaluating the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity; and (5) in finding him to be capable of performing other work existing in significant numbers in the national economy.  The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that although defendant's decision should be reversed, this matter again should be remanded for the purpose of conducting further administrative proceedings.

<u>DISCUSSION</u>

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination.  <u>See</u> <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>See</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  <u>See</u> <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision.  <u>See</u> <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

I.    <u>Plaintiff's Date Last Insured</u>

To be entitled to disability insurance benefits, plaintiff "must establish that [his] disability existed on or before" the date his insured status expired.  <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998); <u>see also</u> <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1460

REPORT AND RECOMMENDATION - 3

1   (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling

2   from time of onset during insured status to time of application for benefits, if individual applies

3   for benefits for current disability after expiration of insured status).  Plaintiff's date last insured

4   was June 30, 2005. See Tr. 465.  As such, to be entitled to disability insurance benefits, plaintiff

5   must establish he was disabled prior to or as of that date. See Tidwell, 161 F.3d at 601.

6   II.     The ALJ's Evaluation of the Medical Evidence in the Record

7          The ALJ is responsible for determining credibility and resolving ambiguities and

8   conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

9   Where the medical evidence in the record is not conclusive, "questions of credibility and

10  resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

11  642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v.

12  Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

13  whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

14  all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

15  within this responsibility." Id. at 603.

16         In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

17  "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

18  "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

19  stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

20  "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

21  draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

22  F.2d 747, 755, (9th Cir. 1989).

23         The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

REPORT AND RECOMMENDATION - 4

opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see</u> <u>also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

A.      Plaintiff's Physical Impairments

Plaintiff argues the ALJ erred in finding he did not have a severe back impairment.  At step two of the sequential disability evaluation process,[1] the ALJ must determine if an alleged

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See <u>id.</u>

REPORT AND RECOMMENDATION - 5

impairment is "severe." 20 C.F.R. § 404.1520.  An impairment is "not severe" if it does not

"significantly limit" the claimant's mental or physical abilities to do basic work activities. 20

C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL

374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs."

20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

        An impairment is not severe only if the evidence establishes a slight abnormality that has

"no more than a minimal effect on an individual[']s ability to work."  See SSR 85-28, 1985 WL

56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841

F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that his "impairments or their

symptoms affect [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d

1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  This step

two inquiry, however, is a *de minimis* screening device used to dispose of groundless claims. See

Smolen, 80 F.3d at 1290.

        In terms of plaintiff's claimed back impairment, as noted above the ALJ found plaintiff's

back problems did not constitute a severe impairment. See Tr. 466.  In addition, the ALJ went on

to find in relevant part as follows:

> With regard to alleged back pain, Karen Barr, M.D., . . . evaluated the
> claimant in April 2002 and noted negative straight leg raising bilaterally, 5/5
> strength bilaterally, and ability to stand on one leg without difficulty (Ex.
> B4F, p. 113). Dr. Barr opined the claimant alleged a "disability out of
> proportion to changes on physical examination" (Ex. B4F, p. 112-115).  In a
> follow-up examination a month later, Dr. Barr noted the claimant's x-rays of
> his spine showed no movement of his grade I spondylolisthesis that would
> suggest instability (*See* Ex. B4F, p. 16).  Dr. Barr concluded the claimant was
> not a good candidate for surgery and recommended only conservative
> treatments such as physical therapy, which the claimant refused insisting he
> needed surgery (Ex. B4F, p. 114).  No further follow-up was scheduled.

Tr. 467.  Plaintiff argues evidence from after the relevant time period in this case – i.e., from the

REPORT AND RECOMMENDATION - 6

alleged onset date of disability of February 21, 2002, through the date his insured status expired, June 30, 2005 – documents ongoing physical problems culminating in spinal instability requiring the use of a cane for balance.  But none of the evidence plaintiff cites in support thereof actually shows plaintiff's use of a cane for balance was medically necessary. See Tr. 412, 513, 561, 573, 586, 588-89, 592-93, 599, 691-92, 694, 722, 726, 921, 923-25, 1054-55, 1057, 1061, 1068-69, 1074-76, 1084-87.  In addition, plaintiff himself points out that this evidence concerns the period subsequent to that during which he must establish disability.  Nor does that evidence contain any retrospective medical opinions establishing the existence of significant work-related limitations during the relevant time period. See Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1461-62 (9th Cir. 1995) (noting it is possible for claimant to establish continuous disabling severity by means of retrospective diagnosis, but only if claimant can prove current disability has existed continuously since date on or before date insurance coverage lapsed).

Plaintiff goes on to argue the ALJ erred in finding his back problems were non-severe, without specifically addressing plaintiff's testimony regarding chronic pain.  But although the ALJ must take into account a claimant's pain and other symptoms at step two of the sequential disability evaluation process (see 20 C.F.R. § 404.1529), the severity determination here is made solely on the basis of the objective medical evidence in the record:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities. If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. Rather, it is reasonable to conclude, based on the minimal impact of the impairment(s), that the individual is capable of engaging in SGA [substantial

REPORT AND RECOMMENDATION - 7

gainful activity].

SSR 85-28, 1985 WL 56856 *4 (emphasis added).  Further, as discussed in greater detail below, the ALJ did not err in discounting plaintiff's credibility regarding his symptoms and complaints, and thus would not have been required to adopt plaintiff's testimony regarding his chronic back pain or any problems related thereto at step two, or as also discussed in greater detail below with respect to plaintiff's residual functional capacity following step three.

Plaintiff also takes issue with the ALJ's finding that his irritable bowel syndrome ("IBS") was not a severe impairment.  See Tr. 466.  Specifically, in terms of that condition the ALJ found in relevant part:

> At the hearing, the claimant alleged problems with IBS with complaints of 8-10 bowel movements a day, pain and problems with eating habits.  However, this is not sufficiently supported by objective medical evidence in the record.  For example, in August 2002, Kazunori Yamamoto, M.D., . . . examined the claimant for the claimant's complaints of constipation, diarrhea, and abdominal pain, along with multiple bowel movements (Ex. B4F, pp. 66-68).  Dr. Yamamoto noted a prior full colonoscopy demonstrated a completely normal examination except for internal hemorrhoids.  No colonic diverticular disease was found and all other testing yielded normal results.  Dr. Yamamoto opined that the various complaints of symptoms along with the lack of objective medical evidence of an organic disease or worrisome constitutional symptoms suggested a process such as IBS rather than a more serious illness, he further attributed the claimant's symptoms to the possibility of being diet-related.
>
> In January 2005, Dr. [Rex Martin] Alvord[, M.D.,] conducted a follow-up physical evaluation of the claimant in January 2005 where the diagnosis of IBS was discontinued and no related symptoms were indicated (Ex. B15F, p. 231).  Subsequent treatment notes evidence that the claimant was no longer taking medication for his alleged colon problems in April 2005 (if not earlier) (Ex. B15F, p. 153).  Thus, though medically determinable, IBS is considered nonsevere.

Id.  Plaintiff argues the record contains numerous diagnoses of IBS, a condition known to cause the symptoms he alleges.  But the existence of a diagnosis or impairment alone is insufficient to establish disability.  See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).  Further, whether

REPORT AND RECOMMENDATION - 8

1   or not a condition is "known" to cause certain symptoms is irrelevant to the disability evaluation

2   process, without actual evidence supporting the existence of symptoms causing significant work-

3   related limitations in the case at hand.  Plaintiff has not made that showing here.

4           In addition, as discussed above with respect to plaintiff's alleged back problems, the ALJ

5   was not required to adopt the symptoms and limitations alleged by plaintiff, given that he did not

6   err in discounting plaintiff's credibility regarding his subjective complaints.  For this reason, the

7   ALJ also did not err in not adopting vocational expert testimony that an individual who needed to

8   leave his or her work station eight to ten times per day to use the restroom could not perform any

9

10  work at step five of the sequential disability evaluation process, as once more such a limitation is

11  premised entirely on plaintiff's self-reports and testimony.

12          Lastly in terms of his alleged IBS, plaintiff argues the ALJ erred in rejecting the disability

13  rating decision provided by the United States Department of Veterans Affairs ("VA").  In that

14  decision, which is dated September 18, 2000, the VA stated its current rating of plaintiff's IBS

15  would continue "as 30 percent disabling," as there appeared "to be some improvement in [his]

16  irritable bowel syndrome but sustained improvement [was] not shown."  Tr. 415.  The VA also

17

18  noted plaintiff had "not lost work" due to his reported symptoms.  Id.  In addition, because there

19  was "a likelihood of improvement," the rating was "not considered permanent."  Id.

20          Although a determination by the VA about whether a claimant is disabled is not binding

21  on the Social Security Administration ("SSA"), an ALJ must consider that determination in

22

23  reaching his or her decision.  McCartey , 298 F.3d at 1076; 20 C.F.R. § 404.1504.  Further, the

24  ALJ "must ordinarily give great weight to a VA determination of disability."  McCartey, 298

25  F.3d 1076.  This is because of "the marked similarity" between the two disability programs:

26          Both programs serve the same governmental purpose--providing benefits to
            those unable to work because of a serious disability.  Both programs evaluate

REPORT AND RECOMMENDATION - 9

a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims. . . . Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims.  Both are administered by the federal government, and they share a common incentive to weed out meritless claims.  The VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework.

Id.  However, "[b]ecause the VA and SSA criteria for determining disability are not identical," the ALJ "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." Id. (citing Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001).  Here, the ALJ did so.

With respect the VA's disability rating decision, the ALJ found in relevant part:

Regarding the VA rating decision of September 18, 2000, case law dictates that a judge in a Social Security Disability case "must ordinarily give great weight to a VA determination of disability." McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).  The VA rating decision concluded that the claimant was disabled due to IBS . . . (Ex. B9F).  However, the undersigned assigns little weight [to] this VA rating decision because it is inconsistent with [the] evidence in the record as a whole, including subsequent compensation evaluations by the VA, as discussed as follows.

. . . the VA report noted that the claimant complained of daily bowel movements usually with loose stool without blood about 5 to 6 times per day since his radiotherapy for Hodgkin's lymphoma in 1997 (Ex. B9F, p. 1).  However, the report noted a decrease in frequency of bowel movements and only rare nausea and no vomiting since the last evaluation.  While he did report some ongoing bowel discomfort, he had not lost any work because of such symptoms.  The report did note a lack of sustained improvement, but is also noted that the rating was not considered permanent and was subject to revision.

In June 2002, the claimant was evaluated by Angela Chan, M.D., at the VA for a compensation evaluation (Ex. B4F, p. 89).  The claimant reported daily abdominal cramping with 5 to 8 stools in the morning that were loose to solid.  Despite his complaints, Dr. Chan noted the claimant was not receiving treatment at the time and reported no work missed due to his colon issues; there is no indication that Dr. Chan changes the claimant's disability rating (Ex. B4F, p. 90).  During a subsequent GI consultation with Dr. Yamamoto in

REPORT AND RECOMMENDATION - 10

August 20002, Dr. Yamamoto noted a full colonoscopy that was "completely normal" with no evidence of colonic diverticular disease (Ex. B4F, p. 67). Biopsies of the claimant's colonic and terminal ileum were also normal.  Dr. Yamamoto attributed the claimant's symptoms to the possibility of being diet-related.  The claimant admitted eating a diet that was not necessarily high in fiber and only "rarely" taking medication to firm up his stool.  He also reported no weight loss or problems with appetite.  Dr. Yammamoto prescribed Bentyl with a requested follow-up in 2 to 3 months.  The record indicates there was no follow-up.  The claimant did subsequently establish care with Victoria Fang, M.D., . . . in November 2002.  Despite the claimant's IBS symptoms, Dr. Fang did not appear to consider them as significant since she did not . . . order any further GI consultations.

In a follow-up VA compensation evaluation in October 2003 by Rex Alvord, M.D., the claimant reported experiencing up to 9 bowel movements in the morning with some abdominal discomfort and that he was being treated with Bentyl (Ex. B10F, p. 2).  However, Dr. Alvord noted that the claimant was attending school on a full-time basis, which suggests the claimant was able to adequately function during the day to attend classes despite his alleged IBS symptoms.

Dr. Alvord conducted another compensation evaluation in January 2005.  The diagnosis of IBS was discontinued and no related symptoms were indicated (Ex. B15F, p. 231).  Furthermore, subsequent treatment notes evidence that the claimant was no longer taking medication for his alleged colon problems in April 2005 (if not earlier) (Ex. B15F, p. 153).

Tr. 472-73.  These are persuasive, specific and valid reasons for discounting the disability rating

decision in this case. See Valentine v. Commissioner Social Security Administration, 574 F.3d

685, (9th Cir. 2009) (stating acquisition of new evidence or properly justified reevaluation of old

evidence constitutes persuasive, specific, and valid reason supported by record under McCartey

for according little weight to VA disability rating).

Plaintiff faults the ALJ for relying on the June 2002 evaluation provided by Dr. Chan, as

that evaluation also indicates plaintiff continued to experience significant symptoms leading to a

diagnosis of IBS.  But it was plaintiff who reported those symptoms (see Tr. 263), with respect to

which as discussed previously the ALJ did not err in discounting his credibility.  Further, also as

discussed above, the mere existence of symptoms or a diagnosed impairment is not sufficient by

REPORT AND RECOMMENDATION - 11

1   itself to establish disability, without objective medical evidence of actual significant work-related

2   limitations related thereto.  Indeed, Dr. Chan did not provide any opinion as to plaintiff's ability

3   to perform such activities. See id.

4          As for Dr. Chan's comment that no work had been missed due to the IBS, plaintiff argues

5   that it is unknown whether he was working at the time of Dr. Chan's report, and that any work he

6   performed after his date last insured did not rise to the level of substantial gainful activity in light

7   of the ALJ's step one determination.[2]  This argument, though, misses the point.  First, the extent

8   to which plaintiff may have been working at the time is not nearly as relevant as the fact that this

9   comment by Dr. Chan strongly indicates plaintiff's IBS did not significantly limit him in the area

10  of work-related activity.  Second, even where work performed is found to not rise to the level of

11  substantial gainful activity at step one of the sequential disability evaluation process, evidence of

12  an ability to perform work or activities indicative of such an ability, as discussed in greater detail

13  below, still can call into question a claimant's allegation of disability.

14         Lastly, plaintiff attempts to dismiss the ALJ's reference to a similar statement made by

15  the VA in its September 18, 2000 disability rating decision, that no work had been missed due to

16  plaintiff's IBS symptoms, by noting that this rating decision was issued prior to the alleged onset

17  date of disability.  But plaintiff cannot have it both ways.  That is, he cannot assert – or at least

18  assert with any logical consistency – that the ALJ should have adopted the VA's disability rating

19  decision issued at that time, but then turn around and argue the ALJ should not also adopt any of

20  the comments contained therein that may be inconsistent with his disability claim.  Instead, the

21  undersigned finds the ALJ did not err in rejecting the VA disability rating decision for all of the

22  reasons noted above, including the comments regarding no missed work.

---

[2] A claimant will not be found disabled for any period of time during which he or she has engaged in "substantial gainful activity." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); see also 20 C.F.R. § 404.1520(a)(4)(i), (b).

REPORT AND RECOMMENDATION - 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

B.    Plaintiff's Mental Impairments

As for his mental impairments, plaintiff argues the ALJ erred in regard to the December 20, 2004 evaluation report of Frank L. Seibel, Psy.D., with respect to which the ALJ found in relevant part:

> The undersigned assigns significant weight to the opinion of Dr. Seibel, an examining psychologist (Ex. B6F) who opined the claimant may have difficulty in an environment "where there is more stimuli," e.g. stress (Ex. B6F, p. 6). Dr. Seibel also opined the claimant's ability to focus and concentrate appeared adequate and that his pace and persistence was only mildly impaired; he also identified no functioning limitations regarding social interaction. The undersigned finds Dr. Seibel's opinion as [sic] consistent with the record as a whole.

Tr. 472. In so finding, plaintiff asserts the ALJ did not accurately reflect what Dr. Seibel stated in his opinion. Specifically, plaintiff points to Dr. Seibel's statement that he appeared "to have some difficulty with inattention at this time," that while "[h]is current symptoms [did] not appear to be severe" they were "having a negative impact on his level of functioning at this time," that though "[c]urrently, his ability to focus and concentrate appear[ed] to be functioning adequately, he might "have some difficulty in environments where there [was] more stimuli," and that both his pace and persistence were "mildly impaired." Tr. 395-96. These statements, plaintiff argues, are vague, and at the very least the ALJ erred in taking them to mean he had no mental functional limitations and should have sought clarification from Dr. Seibel.

The Court, however, finds no ambiguity sufficient here to require the ALJ to have sought additional clarification or to overturn his evaluation of Dr. Seibel's report. As noted by plaintiff, Dr. Seibel opined that his current symptoms did not appear to be severe, that his ability to focus and concentrate were adequate, and that his pace was only mildly impaired. In addition, as noted by the ALJ, Dr. Seibel also found no problems with social interaction. See Tr. 396. It is true that Dr. Seibel did not further explain exactly how plaintiff's symptoms negatively impacted his level

REPORT AND RECOMMENDATION - 13

of functioning, but it was well within the ALJ's authority to resolve this ambiguity by finding Dr. Seibel overall felt plaintiff's problems largely fell in the area of tolerating stress.  In other words, read in context, Dr. Seibel's overall opinion was not sufficiently ambiguous to require additional record development by the ALJ. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (duty to further develop record triggered only when there is ambiguous evidence or when record is inadequate to allow for proper evaluation of evidence).  Given that the ALJ limited plaintiff to requiring a stable work environment, such as one with no extreme stress (see Tr. 469), which the undersigned finds adequately encompasses the one significant area of difficulty Dr. Seibel found as noted above, the ALJ's evaluation of Dr. Seibel's opinion was not improper.

On the other hand, the undersigned does agree with plaintiff that the ALJ erred in failing to discuss the many moderate mental functional limitations found by Trevelyan Houck, Ph.D., and Thomas Clifford, Ph.D., two non-examining, consultative psychologists in early 2005, based on their review of the evidence in the record. See Tr. 148-50.  Defendant argues a non-examining medical source's opinion may be given less weight than that from an examining medical source.  While true, it is not at all clear what weight the ALJ gave to the opinions of Drs. Houck and Clifford, since he did not address them at all in his decision.  Further, because those opinions do constitute significant probative evidence, the ALJ could not reject them or give them less weight without comment.  To that extent, therefore, the ALJ erred.  As such, remand for further consideration thereof in light of the other objective medical evidence in the record regarding plaintiff's mental impairments is warranted.

Plaintiff next argues the ALJ erred in failing to consider the connection between his pain, the medication he took and his attention problems.  In support of this argument, plaintiff points to a mid-December 2004 notation by William S. Kelly, M.D., that his difficulty paying attention

REPORT AND RECOMMENDATION - 14

might be related to his chronic pain and prolonged use of Vicodin, and to a change in medication that occurred in late September 2005 due to reported excessive sedation. See Tr. 946, 1032.  But the notation by Dr. Kelly is merely a possible explanation for plaintiff's self-reported difficulty in paying attention, and does not itself constitute an opinion of functional limitation. See 1032. As for the late September 2005 medication change, this was a change plaintiff himself made (see Tr. 946), and once more because the ALJ did not err in discounting his credibility as discussed in greater detail below, the ALJ was not required to give any credence to that change.

Lastly, plaintiff argues the ALJ should have considered the early May 2008 evaluation of his cognitive functioning provided by Joseph P. McGonagle, Ph.D., [3] even though that evaluation post-dated the relevant time period in this case by nearly three years.  Plaintiff argues it bears on his functional limitations, given the long-standing nature of his condition.  But there is nothing in Dr. McGonagle's evaluation report to indicate the opinions contained therein concerned a period other than the one at the time of the report's issuance. See Tr. 576-82.  Even if it did relate back to the relevant time period in this case, furthermore, the undersigned notes that the report fails to provide any opinion regarding specific work-related limitations.  Accordingly, any error made by the ALJ in not discussing Dr. McGonagle's opinion – or in giving it less weight than that of Dr. Seibel who did expressly address plaintiff's work-related limitations – was harmless. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996) (opinion of psychiatrist who examines claimant after expiration of his or her disability insured status is entitled to less weight than that of psychiatrist who completed contemporaneous examination).

---

[3] It appears this evaluation actually may have been conducted by Scott Hunt, M.A. See Tr. 576-82.  For the reasons discussed herein, however, the actual author thereof is not relevant to resolution of this issue.

REPORT AND RECOMMENDATION - 15

III.    The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

In this case, the ALJ discounted plaintiff's credibility in part for the following reasons:

The undersigned finds that the claimant's physical health symptoms are not substantiated by the record to the degree alleged.  For example, the claimant testified to experiencing ongoing chronic pain, including in his shoulder, and needing to nap and recline "maybe 5 to 10 times" during the day to relieve his

REPORT AND RECOMMENDATION - 16

pain.  However, such symptoms are not adequately documented or are not consistent with the record.  For example, in December 2003, the claimant demonstrated full range of motion in his right shoulder with 5/5 strength (Ex. B4F, p. 62).  The claimant also reported in 2003 that he worked out his shoulder using 25-30 lb. dumbbells and that his daily activities were "not significantly" impacted since he is primarily left handed (Ex. B10F, p. 1).

In April 2004, the claimant exhibited full range of motion in his neck, normal gait, symmetrical bilateral upper and lower extremities, no atrophy in upper extremities, near full range of motion of his right upper extremity, and normal EMG (Ex. B4F, p. 112).  The treatment notes mentioned possibility of radiation neuropathy on the right side, but objective evidence demonstrating a direct connection is noticeably absent (*See* Ex. B4F, pp. 40-48).

Tr. 470.  These are all valid reasons for discounting plaintiff's credibility.  See Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's subjective complaints are inconsistent with clinical observations can satisfy clear and convincing requirement); Smolen, 80 F.3d at 1284 (prior inconsistent statements concerning symptoms may be considered).  Indeed, plaintiff does not specifically challenge them here.

The ALJ went on to discount plaintiff's credibility in part because:

. . . the claimant expressed optimism regarding his physical situation in 2005 (Ex. B15F, p. 179).  In addition, the claimant reported in April 2005 that he enjoyed camping, fishing, traveling around the area, and "walking around" with his wife – activities which suggest the claimant was not as functionally limited as alleged (Ex. B15F, p. 223). . . .

Tr. 470.  The undersigned agrees with plaintiff that his expression of optimism concerning his situation does not actually demonstrate his physical capabilities were not as severe as he alleged.  On the other hand, while it is true that the report from April 2005 does not indicate exactly the extent to which plaintiff was able to engage in those activities at the time, the ALJ did not err in treating the statement that plaintiff enjoyed doing them as a strong indication that his physical impairments were not as limiting or disabling as alleged.  See Reddick, 157 F.3d at 722 (activities bear on claimant's credibility if activity level is inconsistent with claimed limitations).  Plaintiff

REPORT AND RECOMMENDATION - 17

argues this statement should be read in context with the remainder of that report, wherein various

physical problems he reportedly was having also were noted. See Tr. 1017-18.  That description

of plaintiff's medical history, however, is merely that, a description.  It gives no indication that

plaintiff's statement regarding enjoying the above activities should be given any less credence or

should otherwise be discounted.[4]

> The ALJ also discounted plaintiff's credibility in part because:

> . . . the record document[s] that as of May 2003, the claimant had failed to
> show up for 6 follow-up appointments with the VA Oncology Department
> despite verbal confirmation with the claimant; as a result, the oncology
> department refused to make any future appointments with the claimant (Ex.
> B4F, p. 116).  Dr. Fang noted in April 2004 that the claimant failed to follow-
> through with referrals to a chronic pain clinic and mental health provider (Ex.
> B5F, p. 9).  Also in 2004, the claimant again failed to show up for an
> appointment with Dr. Kelly, a treating physician at the VA (Ex. B4F, p. 115).
> In December 2004, Dr. Kelly noted that 3 attempts had to be made to schedule
> the initial psychological evaluation because the claimant failed to show up
> (Ex. B15F, p. 234).

Tr. 471.  The failure to assert a good reason for not seeking or following a prescribed course of

treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity

of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  Plaintiff

argues he did provide good reasons for not following up with his appointments, such as having

---

[4] Plaintiff also points out that he need not be "utterly incapacitated" to be eligible for disability benefits, and that "many home activities may not be easily transferable to a work environment." Smolen, 80 F.3d at 1284 (claimant's testimony may be rejected if he or she is able to spend substantial part of his or her day performing household chores or other activities that are transferable to work setting); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (disability claimants should not be penalized for attempting to lead normal lives in face of their limitations); Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (finding reading and watching television to be such undemanding activities that they cannot be said to bear meaningful relationship to activities of workplace).  The record, however, contains further evidence that plaintiff has engaged in additional activities that are "inconsistent with his testimony that he has difficulty with functioning due to his physical and mental symptoms." Tr. 471; see also Tr. 394 (enjoys gardening and gets out of house on fairly regular basis to go shopping and run errands, but needs break after about half hour of doing chores), 417 (daily activities not significantly impacted), 552 (takes care of his three-year-old son), 883 (normal day includes playing with son and taking care of house), 884 ("States he is a house husband[,] i.e.[,] takes care of the baby, cooks and cleans.").  Further, as defendant points out, the Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination," first, as noted above, they can "meet the threshold for transferable work skills," second, they can "contradict his other testimony." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  The evidence in the record supports both grounds.

REPORT AND RECOMMENDATION - 18

car trouble and difficulty focusing.  But as plaintiff himself points out, the record is for the most

part devoid of any reason as to why those appointments were missed.  See Tr. 215, 224-25, 235,

289-90, 332, 338-40, 655, 657, 804, 954, 962-64, 966, 976, 986, 1028, 1032, 1040.  As such, the

ALJ did not err in discounting plaintiff's credibility for this reason.

The ALJ further discounted plaintiff's credibility in part for the following reasons:

> The record also evidences instances where the claimant has not been
> forthcoming regarding his substance and alcohol abuse, which clouds the
> diagnostic picture and any resulting functioning limitations.  For example, the
> claimant failed to mention in his testimony of [sic] his cannabis use during
> the relevant time period.  In April 2005, the claimant admitted to daily cannabis
> use for the past 6 months – meaning he was abusing as early as October 2004
> (Ex. B15F, p. 222).  In May 2005, the claimant admitted to his group therapist
> that he needed cannabis and alcohol to manage his health, and admitted he
> was reluctant to consider life[-]long sobriety as a goal through he was willing
> to maintain sobriety to satisfy the court order stemming from his multiple
> DUIs (Ex. B15F, p. 218).  Also, Dr. Seibel noted in his psychological
> evaluation that he suspected the claimant was not being wholly forthcoming
> about his alcohol abuse (Ex. B6F, p. 5).

Tr. 471.  Plaintiff argues he has not denied he has a problem with alcohol abuse.  The point here,

however, is that as noted by the ALJ above, plaintiff was not always forthcoming about the level

and extent of his substance abuse, including his failure to mention at the hearing his cannabis use

during the relevant time period.  As such, the ALJ did not err here. See Smolen, 80 F.3d at 1284

(ALJ may consider testimony that appears less than candid).

Lastly, plaintiff discounted plaintiff's credibility in part because:

> The claimant has a poor work history . . .  The claimant testified to an inability
> to work due to his physical and mental impairments.  However, the record
> documents that the claimant was fired from his last job in February 2002 as a
> cashier due to a discrepancy in the amount of cash in the till rather than for
> reasons related to any of his impairments (Ex. B15F, p. 223).

Tr. 471-72.  This too was a valid reason for finding plaintiff not entirely credible. See Thomas v.

Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly found that claimant's extremely poor

REPORT AND RECOMMENDATION - 19

work history and lack of propensity to work in her lifetime had negatively affected her credibility

regarding her inability to work).  Plaintiff argues the ALJ erred here, pointing to a different part

of the record where he states that he stopped working due to "**medical problems**," and because

"**[t]here was an incident about the quality of [his] work which was caused by [his] not being

mentally alert due to the medications [he] was taking**." Tr. 68 (emphasis in original).  When

plaintiff reported this incident to one of his treatment providers in late April 2005, he stated only

that he was fired "because of a $50 error in his till," and did not blame that "error" on his mental

or physical difficulties. Tr. 1017.

        Accordingly, the undersigned finds the ALJ did not err here as well.  Thus, while the ALJ

did provide one improper reason for discounting plaintiff's credibility as discussed above, that

fact did not render the ALJ's overall credibility determination invalid, since, also as discussed

above, that determination is supported by the substantial evidence in the record. See Tonapetyan,

242 F.3d at 1148.

IV.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

        Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

take into account," unless the ALJ "expressly determines to disregard such testimony and gives

reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

link his determination to those reasons," and substantial evidence supports the ALJ's decision.

Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample,

694 F.2d at 642.

        The record contains a written statement from plaintiff's wife, in which she describes her

REPORT AND RECOMMENDATION - 20

observations of his symptoms and limitations.  <u>See</u> Tr. 505-06.  The ALJ found as follows with

respect to that statement:

> The undersigned also considered the written statements by the claimant's
> wife, Andrea Haydo, provided in June 2009 regarding the claimant's
> functioning and assigns it little weight (Ex. B18E).  Mrs. Haydo alleged that
> the claimant had difficulties with bending, lightheadedness, prolonged sitting
> without getting up to stretch, frequently going to the bathroom, and attention.
> She also alleged that the claimant required taking breaks when cooking or
> cleaning and spending up to 2 days per week in bed.  However, her
> allegations, which are similar to those alleged by the claimant herself, are not
> sufficiently supported by the record for the various reasons already discussed
> above.  Also, the undersigned finds that the claimant's residual functional
> capacity adequately addresses any limitations by limiting the claimant to less
> than light level of work with manipulative, postural, environmental, and
> mental limitations.  Furthermore, the record lacks medical opinions that are
> consistent with Mrs. Haydo's allegations.

Tr. 474.  Plaintiff argues the ALJ erred in rejecting his wife's statement for the same reasons she

rejected his own subjective complaints, because those reasons were improper with respect to his

own credibility.  But as discussed above, the ALJ did not err overall in finding plaintiff to be not

fully credible.

An ALJ, furthermore, may reject lay witness evidence if other evidence in the record

concerning the claimant's activities is inconsistent therewith.  <u>See</u> <u>Carmickle v. Commissioner,</u>

<u>Social Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (ALJ's rejection of lay witness

evidence because it was inconsistent with claimant's successful completion of continuous full-

time coursework constituted reason germane to claimant).  In addition, as stated by the Ninth

Circuit in <u>Valentine</u>:

> [The lay witness's] testimony of her husband's fatigue was similar to [the
> claimant's] own subjective complaints.  Unsurprisingly, the ALJ rejected this
> evidence based, at least in part, on "the same reasons [she] discounted [the
> claimant's] allegations."  In light of our conclusion that the ALJ provided
> clear and convincing reasons for rejecting [the claimant's] own subjective
> complaints, and because [the lay witness's] testimony was similar to such

REPORT AND RECOMMENDATION - 21

complaints, it follows that the ALJ also gave germane reasons for rejecting
her testimony.

574 F.3d at 694.  Thus, here too, because the ALJ provided clear and convincing reasons for not

finding plaintiff to be entirely credible, and rejected plaintiff's wife's statement – which also was

substantially similar to plaintiff's own testimony – at least in part on those same reasons, the ALJ

provided germane reasons for rejecting that statement.

Plaintiff goes on to argue that in light of <u>Bruce v. Astrue</u>, 557 F.3d 1113 (9th Cir. 2009),

the ALJ erred in rejecting his wife's statement due to a lack of objective medical evidence in the

record to support it.  It is true that in <u>Bruce</u> the Ninth Circuit held the claimant's wife's testimony

in that case could not be discredited "as not supported by medical evidence in the record." <u>Id.</u> at

1116.  In so holding, the Ninth Circuit relied on its prior decision in <u>Smolen</u>, in which it held that

the ALJ improperly rejected the claimant's family testimony on the basis that medical records

did not corroborate the claimant's symptoms, because in so doing, the ALJ violated defendant's

directive "to consider the testimony of lay witnesses where the claimant's alleged symptoms are

*unsupported* by her medical records." <u>Bruce</u>, 557 .3d at 1116 (citing 80 F.3d at 1289) (emphasis

in original).  However, the Ninth Circuit did not address two of its earlier decisions, in which it

expressly held that "[o]ne reason for which an ALJ my discount lay testimony is that it conflicts

with medical evidence." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001); <u>see</u> <u>also</u> <u>Vincent v.</u>

<u>Heckler</u>, 739 F.2d 1393, 1995 (9th Cir. 1984) (ALJ properly discounted lay testimony that

conflicted with available medical evidence)).

Accordingly, although <u>Bruce</u> is the Ninth Circuit's most recent pronouncement on the

issue of discounting lay witness evidence due to inconsistency with the medical evidence in the

record, given that no mention of <u>Lewis</u> and <u>Vincent</u> were made in that case, and that neither of

the holdings in those earlier decisions concerning this issue were expressly reversed, it is not at

REPORT AND RECOMMENDATION - 22

all clear that discounting lay witness evidence on this basis is no longer allowed. Nevertheless,

that apparent conflict in Ninth Circuit precedent does not prevent resolution of this issue in this

case, since, as discussed above, the ALJ provided other germane reasons for rejecting plaintiff's

wife's statement.

V.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

        If a disability determination "cannot be made on the basis of medical factors alone at step

three of the evaluation process," the ALJ must identify the claimant's "functional limitations and

restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p,

1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at

step four to determine whether he or she can do his or her past relevant work, and at step five to

determine whether he or she can do other work. See id. It thus is what the claimant "can still do

despite his or her limitations." Id.

        A claimant's residual functional capacity is the maximum amount of work the claimant is

able to perform based on all of the relevant evidence in the record. See id. However, an inability

to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ

must consider only those limitations and restrictions "attributable to medically determinable

impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the

claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be

accepted as consistent with the medical or other evidence." Id. at *7.

        In this case, the ALJ assessed plaintiff with the following residual functional capacity:

        **. . . through the date last insured, the claimant had the residual functional
        capacity to perform light work . . . except the claimant can lift and/or
        carry up to 20 lbs. occasionally and 10 lbs. frequently; stand and/or walk
        for up to 6 hours (with normal breaks) in an 8 hour workday; and sit for
        up to 6 hours (with normal breaks) in an 8 hour workday. The claimant
        can occasionally push and/or pull with his right upper extremity. The**

REPORT AND RECOMMENDATION - 23

**claimant can occasionally reach overhead and forward.  The claimant can never climb ropes/ladders/scaffolds and must avoid concentrated exposure to vibrations.  Further, the claimant requires a stable work environment, e.g., no extreme stress.**

Tr. 469 (emphasis in original).  Plaintiff argues this RFC assessment does not accurately reflect all of his functional limitations.  The undersigned agrees that because the ALJ erred in evaluating the medical evidence in the record concerning plaintiff's mental impairments as discussed above, it is unclear whether the ALJ's assessment of his residual functional capacity is complete.  Thus, remand for further consideration thereof is warranted.

VI.   The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do.  See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids").  Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ.  See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence.  See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the second hearing, the ALJ posed a hypothetical question to the vocational expert that

REPORT AND RECOMMENDATION - 24

contained substantially the same limitations as were included in the ALJ's RFC assessment. See Tr. 1113-14.  In response thereto, the vocational expert testified that a hypothetical individual with those limitations, and with the same age, education and work background as plaintiff, would be able to perform other jobs. See Tr. 1114-15.  Based on that testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. See Tr. 474-75.  Once more the undersigned agrees with plaintiff that the ALJ erred here, in light of the ALJ's failure to properly evaluate the medical evidence in the record concerning plaintiff's mental impairments and to properly assess his RFC.

Plaintiff further argues the ALJ's hypothetical question – and, for that matter, his residual functional capacity assessment – also was incomplete, as it did not include an inability to sit for more 20 to 30 minutes at a time, indicate difficulty with standing and/or walking, include a need for numerous breaks for resting and going to the bathroom, or reflect difficulties with respect to concentration, persistence, pace and hostility.  In regard to the above alleged physical limitations, there is no error, given that plaintiff has failed to show the ALJ improperly evaluated the medical evidence in the record concerning his physical impairments.  As for the alleged mental functional impairments, it is not entirely clear what difficulties plaintiff alleges were not properly included. Nevertheless, as previously discussed, remand for further consideration of the objective medical evidence in the record regarding plaintiff's mental impairments is warranted.

Plaintiff further asserts it is difficult to imagine how the jobs identified by the vocational expert could be performed, in light of his need to do simple tasks in a slow-paced environment with the ability to sit/stand at will and take frequent breaks. But again, the ALJ did not err in evaluating the medical evidence in the record concerning plaintiff's physical impairments and limitations.  Accordingly, there was no error in regard to the ALJ's failure to include a need to

REPORT AND RECOMMENDATION - 25

1  sit/stand or to take frequent breaks.  As for the limitation to simple tasks done in a slow-paced

2  environment, once more it remains to be seen on remand whether or not those limitations would

3  be warranted here.

4  VII.    This Matter Should Be Remanded for Further Administrative Proceedings

5          The Court may remand this case "either for additional evidence and findings or to award

6  benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

7  proper course, except in rare circumstances, is to remand to the agency for additional

8  investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

9  omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

10  unable to perform gainful employment in the national economy," that "remand for an immediate

11  award of benefits is appropriate." Id.

12          Benefits may be awarded where "the record has been fully developed" and "further

13  administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

14  v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

15  where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues still remain in regard to the medical evidence in the record concerning plaintiff's

mental impairments and limitations, his residual functional capacity and his ability to perform

other jobs existing in significant numbers in the national economy, remanding this matter for the

purpose of conducting further administrative proceedings is warranted.

REPORT AND RECOMMENDATION - 26

CONCLUSION

Based on the foregoing discussion, the Court should find defendant improperly concluded plaintiff was not disabled.  Accordingly, the Court should reverse defendant's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 22, 2011**, as noted in the caption.

DATED this 7th day of April, 2011.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 27